*Fee Not Taken*

*FILED*

*NP*

*ADR*

1   **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2   Name    **HARO        ONESIMO        M.**

       (Last)            (First)            (Initial)

3   Prisoner Number    **E-66727**

4   Institutional Address   **POB 9**

5            **AVENAL,  CA   93204**

6

7                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA

8   **ONESIMO HARO**

    (Enter the full name of plaintiff in this action.)

9                                        **C08 01325 CW**

                                    Case No.
10       **J. HARTLEY,   Warden**              (To be provided by the clerk of court)

11   _____       **PETITION FOR A WRIT
                                        OF HABEAS CORPUS**
12   _____

13   _____

14   (Enter the full name of respondent(s) or jailor in this action)

15

16   ===================================================================
                    Read Comments Carefully Before Filling In

17   When and Where to File

18          You should file in the Northern District if you were convicted and sentenced in one of these

19   counties:  Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23          If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located.  If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined.  Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS       - 1 -

1  Who to Name as Respondent

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          **SANTA CLARA COUNTY SUPERIOR COURT,   SAN JOSE**

15                 Court                              Location

16          (b)    Case number, if known __**134834**_____

17          (c)    Date and terms of sentence __**17-YEARS TO LIFE**_____

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                 parole or probation, etc.)          Yes __**XXX**__    No _____

20                 Where?

21                 Name of Institution: __**AVENAL STATE PRISON**_____

22                 Address: **POB 9,   AVENAL,   CA   93204**

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  **SECOND DEGREE MURDER,   PC §187**

27  **GUN ENHANCEMENT,   PC §12022.5(a)**

28

1   3. Did you have any of the following?

2      Arraignment:                          Yes **XXX**    No _____

3      Preliminary Hearing:                  Yes **XXX**    No _____

4      Motion to Suppress:                   Yes **UKN**    No _____

5   4. How did you plead?

6      Guilty _____   Not Guilty **XXX**  Nolo Contendere _____

7      Any other plea (specify) _____**BUNNELL PLEA**_____

8   5. If you went to trial, what kind of trial did you have?

9      Jury _____     Judge alone_____   Judge alone on a transcript ___**XXX**

10  6. Did you testify at your trial?               Yes _____    No _**XXX**

11  7. Did you have an attorney at the following proceedings:

12      (a)    Arraignment                   Yes **XXX**    No _____

13      (b)    Preliminary hearing           Yes **XXX**    No _____

14      (c)    Time of plea                  Yes **XXX**    No _____

15      (d)    Trial                         Yes **XXX**    No _____

16      (e)    Sentencing                    Yes **XXX**    No _____

17      (f)    Appeal                        Yes _____    No **XXX**

18      (g)    Other post-conviction proceeding   Yes _____    No **XXX**

19  8. Did you appeal your conviction?             Yes _____    No _**XXX**

20      (a)    If you did, to what court(s) did you appeal?

21             Court of Appeal               Yes _____    No _____

22             Year: _____    Result:_____

23             Supreme Court of California   Yes _____    No _____

24             Year: _____    Result:_____

25             Any other court               Yes _____    No _____

26             Year: _____    Result:_____

27

28      (b)    If you appealed, were the grounds the same as those that you are raising in this

1    petition?                              Yes _____    No_____

2    (c)    Was there an opinion?           Yes _____    No_____

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                           Yes _____    No_____

5    If you did, give the name of the court and the result:

6    _____

7    _____

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?         Yes **XXX**    No_____

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition.  You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28

15    U.S.C. §§ 2244(b).]

16        (a)    If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding.  Attach extra paper if you need more space.

18        I.    Name of Court: __**SANTA CLARA COUNTY SUPERIOR COURT**__

19            Type of Proceeding: **HABEAS CORPUS**_____

20            Grounds raised (Be brief but specific):

21            a.__**SAME AS THIS PETITION**_____

22            b._____

23            c._____

24            d._____

25            Result: __**DENIED**_____Date of Result:_**10/10/07**

26        II.    Name of Court: __**SIXTH APPELLATE DISTRICT COURT**__

27            Type of Proceeding: __**HABEAS CORPUS**_____

28            Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS        - 4 -

1     a. **SAME AS THIS PETITION**

2     b.

3     c.

4     d.

5     Result: **DENIED**                              Date of Result: **12/3/07**

6     III.    Name of Court: **CALIFORNIA SUPREME COURT**

7     Type of Proceeding: **PETITION FOR REVIEW**

8     Grounds raised (Be brief but specific):

9     a. **SAME AS THIS PETITION**

10    b.

11    c.

12    d.

13    Result: **DENIED**                              Date of Result: **01/16/08**

14    IV.    Name of Court: **N/A**

15    Type of Proceeding:

16    Grounds raised (Be brief but specific):

17    a.

18    b.

19    c.

20    d.

21    Result:                                         Date of Result:

22    (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                      Yes _____    No **XXX**

24    Name and location of court:

25    B. GROUNDS FOR RELIEF

26    State briefly every reason that you believe you are being confined unlawfully. Give facts to

27    support each claim. For example, what legal right or privilege were you denied? What happened?

28    Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS          - 5 -

1   need more space. Answer the same questions for each claim.

2         [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5         Claim One:___**SEE ATTACHED BRIEF.**_____

6   _____

7         Supporting Facts:_____

8   _____

9   _____

10  _____

11        Claim Two:___**SEE ATTACHED BRIEF.**_____

12  _____

13        Supporting Facts:_____

14  _____

15  _____

16  _____

17        Claim Three:___**SEE ATTACHED BRIEF.**_____

18  _____

19        Supporting Facts:_____

20  _____

21  _____

22  _____

23        If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  _____**N/A**_____

26  _____

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    _____**SEE ATTACHED BRIEF**_____

5    _____

6    _____

7    Do you have an attorney for this petition?                          Yes_____     No__**XXX**__

8    If you do, give the name and address of your attorney:

9    _____

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on ___*2-24-08*___                    _____

14                  Date                                    Signature of Petitioner

15

16

17

18

19

20   (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

ADR

1.
2.
3.
4.
5.
6.
7.
8.                    UNITED STATES DISTRICT COURT
9.                  NORTHERN DISTRICT OF CALIFORNIA
10.

# C08 01325 CW

No.  Not Assigned Yet

11. ONESIMO HARO
12.        Petitioner,
13.        v.
14. J. HARTLEY, Warden
15.        Respondent, et al.
16.
17.
18.            PETITION FOR WRIT OF HABEAS CORPUS
19.                    28 U.S.C. §2254
20.
21.
22.
23. ONESIMO HARO  E-66727
24. POB 9
25. Avenal, CA  93204
26. Avenal State Prison
27. Pro Se

## TABLE OF CONTENTS

PAGE

INTRODUCTION
1

THE PARTIES
1

STATEMENT OF FACTS
1

MEMORANDUM OF POINTS AND AUTHORITIES
5

I    DECLARATORY AND INJUNCTIVE RELIEF IS PROPER
5

II   PETITIONER IS ENTITLED TO A DECLARATION AND INJUNCTION
     PROHIBITING THE BOARD AND CDC FROM FINDING AGGRAVATING
     FACTORS THAT WERE NOT FOUND TRUE BEYOND A REASONABLE
     DOUBT DURING HIS CRIMINAL TRIAL PURSUANT TO THE SIXTH
     AND FOURTEENTH AMENDMENTS
6

III  CALIFORNIA HAS A LIBERTY INTEREST PAROLE STATUTE THAT
     DOES NOT AUTHORIZE THE BOARD TO FIND AGGRAVATING
     CIRCUMSTANCES OF THE OFFENSE
11

IV   THE SUPERIOR COURT ERRED WHEN IT HELD A DSL TERM TO LIFE
     PRISONER IS NOT ENTITLED TO THE SAME SIXTH AND FOURTEENTH
     AMENDMENT RIGHTS DURING THEIR CRIMINAL PROCEEDINGS AS A
     DSL DETERMINATE SENTENCED PRISONER IS ENTITLED
     UNDER CUNNINGHAM AND BLAKELY
15

V    EVIDENTIARY HEARING
17

VI   WHAT SIXTH AND FOURTEENTH AMENDMENT RIGHTS DO
     DSL TERM TO LIFE PRISONERS RETAIN AFTER CONVICTION
18

QUESTIONS PRESENTED FOR REVIEW
19

REMEDY
19

CONCLUSION
19

## TABLE OF AUTHORITIES

CASES                                                            PAGES
In re Davis (1979) 25 Cal.3d 384, 387                           5,6
In re Bittaker (1997) 55 Cal.App.4th 1004                       5
In re Semons (1989) 208 Cal.App.3d 1022                         5
In re Jackson (1987) 43 Cal.3d 501                              5
Mendoza v. County of Tulare (1982) 128 Cal.App.3d 403           5
In re Brindle (1979) 91 Cal.App.3d 660                          5
Harris v. Nelson (1969) 394 U.S. 286                            5,6
Murray v. Carrier (1986) 477 U.S. 478                           5,6
Cunningham v. California (2007) U.S. LEXIS 1324                 passim
People v. Sandoval (2007) Cal. LEXIS 7606                       6,8,10
In re Dannenberg (2005) 34 Cal.4th 1061                         passim
In re Rosenkrantz (2002) 29 Cal.4th 616                         passim
Connecticut Board of Pardons v. Dumschat (1981) 452 U.S. 458   11,12
Bishop v. Wood (1976) 426 U.S. 341                             11,12
Greenholtz v. Nebraska (1979) 442 U.S. 1                       11,12
Board of Pardons v. Allen (1987) 482 U.S. 369                  11,12,13
Irons v. Carey (2007) 479 F.3d 658                             11,12
In re Tripp (2007) 58 CR3d 64                                  12
Blakely v. Washington (2004) 542 U.S. 296                      13
Speiser v. Randall (1958) 357 U.S. 513                         13
Mullaney v. Wilbur (1975) 421 U.S. 684                        14,15
In re Winship (1970) 397 U.S. 358                             14,15
In re Elkins (2006) 144 Cal.App.4th 475                       14

CONSTITUTIONAL PROVISIONS
Sixth Amendment U.S. Constitution                              passim
Fourteenth Amendment U.S. Constitution                         passim

STATUTES
Penal Code §§'s
187                                                            2
12022.5(a)                                                     2
189                                                            2,7
3041(a)                                                        passim
3041(b)                                                        passim
1473(a)                                                        5

CALIFORNIA CODE OF REGULATIONS TITLE 15 §
2402(c)(1)(A-E)                                                3

TABLE OF EXHIBITS

EXHIBIT 1    AUGUST 21, 1990, EXCERPTS PROBATION OFFICER'S REPORT (POR)

EXHIBIT 2    JANUARY 16, 1990 INDICTMENT FOR MURDER

EXHIBIT 3    AUGUST 21, 1990 ABSTRACT OF JUDGMENT

EXHIBIT 4    MARCH 19, 2001 LIFE PRISONERS EVALUATION REPORT (LPER)

EXHIBIT 5    PETITIONER'S DECLARATION

EXHIBIT 6    JULY 21, 2004 LPER

EXHIBIT 7    JULY 23, 2007 LPER

EXHIBIT 8    OCTOBER 10, 2007 SANTA CLARA SUPERIOR COURT DENIAL

EXHIBIT 9    DECEMBER 3, 2007 SIXTH APPELLATE DISTRICT COURT DENIAL

EXHIBIT 10   JANUARY 16, 2008 CALIFORNIA SUPREME COURT DENIAL

### INTRODUCTION

1. This petition is seeking declaratory and injunctive relief against the Board of Parole Hearings (Board). The declaration and injunction are intended to clarify and enforce petitioner's rights that evolved during his criminal process pursuant to the <u>Sixth</u> and <u>Fourteenth</u> <u>Amendments</u> of the United States Constitution.

2. Petitioner is trying to surface and correct the fact that no **aggravated** circumstances were found during his criminal process regarding his second degree murder conviction.

3. Therefore, pursuant to his constitutional rights under the <u>Sixth</u> and <u>Fourteenth</u> <u>Amendments</u> regarding criminal trials, petitioner's second degree murder conviction was "for the minimum necessary to sustain [the] conviction," until proven otherwise in a court of law.

### THE PARTIES

4. Petitioner is in custody at Avenal State Prison, in Avenal California, in Kings County.

5. J. Hartley, is currently the        warden at Avenal State Prison.

6. James Davis is currently the Chairperson for the Board. The Board's headquarters are located in Sacramento California.

### STATEMENT OF FACTS

7. On August 23, 1989, at approximately 2:00 a.m., officers of the Gilroy Police Department responded to 495 Adams Court, Gilroy, California, to investigate a possible shooting. The investigating officers were met by relatives who indicated the defendant and the 49-year-old victim, Maria Benavides Haro, had both been shot with a handgun and were in the residence. The officer[s] observed the victim to have suffered several bullet wounds in the abdomen and the defendant

1

a bullet wound to the chest area.  As the victim was being transported to the hospital she stated to the investigating officer, "My husband tried to kill me."  The victim further stated that her husband had shot her as he was jealous.  The defendant stated to investigating officers that he shot his wife "because she does not love me, she loves another."  Both the defendant and the victim were transported to San Jose Hospital via helicopter where the victim succumbed approx-24 hours later.  (Exhibit 1, page 2, or C405.)

8.   On January 16, 1990, the District Attorney for Santa Clara County accused petitioner of a felony, to wit, a violation of California Penal Code §187 (Murder), did unlawfully and with malice aforethought, kill the victim.  Additionally, it was alleged that at the time of offense, petitioner personally used  a firearm, to wit, a handgun, within the meaning of Penal Code §12022.5(a).  (Exhibit 2.)

9.   Petitioner pled not guilty to the charges and elected to exercise his right to court trial, Bunnell plea, safeguarded by the Sixth and Fourteenth Amendments.  (Exhibit 1, page 1, or C404 and exhibit 3.)

10.  On June 14, 1990, Judge Ahern found petitioner guilty of second degree murder.  The gun enhancement allegation was also found to be true.  He was sentenced for a total term of 17-years to life with the possibility of parole.  (Exhibit 3.)

11.  Second degree murder in California is defined as, "the unlawful killing of a human being ... with malice aforethought."  (Penal Code §187(a).)  The trial court's verdict in petitioner's case expressly acquitted him of lying in wait, torture, or by any other kind of will-full, deliberate, and premeditated killing.  (Penal Code §189.)

///

2

12.  Equally important, the trial court's verdict in petitioner's
case found no factors in aggravation of the crime which would require
a more lengthy period of incarceration when he appeared before the
Board for parole.  (See Penal Code §§'s 3041(a) and (b); and California
Code of Regulations Title 15 (15CCR) §2402(c)(1)(A-E); and exhibit 1,
page C415.)

13.  Petitioner was received by the California Department of Cor-
rections (CDC) on August 29, 1990, and his Minimum Eligible Parole
Date (MEPD) was fixed at December 23, 2000.  (Exhibit 4, page 1.)

14.  On March 20, 2001, petitioner appeared before the Board for his
initial parole consideration hearing.  Prior to the hearing, a Life
Prisoner Evaluation Report (LPER) was prepared by a correctional coun-
selor I (CCI).  (Exhibit 4.)  The CCI summarized the crime facts as
cited supra by petitioner.  The CCI also found aggravating factors
in the LPER that were contrary to petitioner's criminal trial such as:

    A.  The victim was particularly vulnerable.
    B.  The crime included a deadly weapon.
    C.  The victim feared for her life.
    D.  The crime included the use of alcohol.
    (See exhibit 4, page 3.)

The only aggravating factor listed in the POR is use of a deadly weapon.
However, the weapon enhancement was charged, found true and petitioner
received a 2-year enhancement on that charge.  Petitioner was denied
parole for three years based primarily on the commitment offense.  (Ex.5.)

15.  On July 21, 2004, petitioner appeared before the Board for his
first subsequent parole consideration hearing.  Prior to the hearing,
a LPER was prepared by a CCI.  (Exhibit 6.)  The CCI again summarized
the crime facts as cited supra by petitioner.  The CCI also found
another aggravating factor that was contrary to petitioner's criminal

3

trial, i.e., "The crime involved great violence and great bodily harm." (Exhibit 6, page 3.) Petitioner was denied parole for three years again based primarily on the commitment offense. (Exhibit 5.)

16. On July 23, 2007, petitioner was scheduled to appear before the Board for his second subsequent parole consideration hearing. Prior to the hearing, a LPER was prepared by a CCI. (Exhibit 7.) The CCI again found an aggravating factor that was contrary to petitioner's criminal trial, i.e., "The crime involved great violence and great bodily harm." (Exhibit 7, page 3.) This parole hearing was postponed for some unknown reason. (Exhibit 5.)

17. On August 26, 2007, petitioner handed a petition for writ of habeas corpus over to prison officials for mailing to Santa Clara County Superior Court. On October 10, 2007, the superior court denied the petition. (Exhibit 8.)

18. On November 12, 2007, petitioner handed a petition for writ of habeas corpus over to prison officials for mailing to the Sixth Appellate District Court. On December 3, 2007, the appellate court denied the petition. (Exhibit 9.)

19. On December 9, 2007, petitioner handed a petition for review over to prison officials for mailing to the California Supreme Court. On January 16, 2008, the Supreme Court denied the petition. (Exhibit 10.)

20. The state courts denied the petition by stating that Cunningham v. California does not apply to DSL term to life prisoners. Petitioner can understand that Cunningham's entire holding may not apply to his case. However, what Sixth and Fourteenth Amendment rights does petitioner retain regarding aggravating fact finding during their criminal proceedings when they appear before the Board **was never answered** in the state courts.

4

## MEMORANDUM OF POINTS AND AUTHORITIES

### I

### DECLARATORY AND INJUNCTIVE RELIEF IS PROPER

A writ of habeas corpus is the proper vehicle to obtain declaratory and injunctive relief in both the state and federal courts when challenging arbitrary and lawless state action.

In state courts, "A writ of habeas corpus may be brought to obtain a declaration and enforcement of a prisoner's rights in confinement." (In re Davis (1979) 25 Cal.3d 384, 387; In re Bittaker (1997) 55 Cal.App.4th 1004, 1010; In re Semons (1989) 208 Cal.App.3d 1022, 1024 fn.3; In re Jackson (1987) 43 Cal.3d 501, 504 fn.1; Mendoza v. County of Tulare (1982) 128 Cal.App.3d 403, 420.)

"The writ of habeas corpus is, of course an appropriate procedure to challenge the legality of confinement or to allege unlawful restraint, on liberty ... under any pretense whatever...." (Penal Code §1473(a); Mendoza supra at 420.)

"The function of habeas corpus has evolved from traditional remedy for release of a prisoner to include a declaration of rights of a prisoner not entitled to outright release." (In re Brindle (1979) 91 Cal.App.3d 660, 669.)

In federal courts, "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." (Harris v. Nelson (1969) 394 U.S. 286, 291; Murray v. Carrier (1986) 477 U.S. 478, 501; see also Brindle supra at 669-670.)

"The writ of habeas corpus is the fundamental instrument for

5

safeguarding individual freedom against arbitrary and lawless state action." (Harris supra at 290-291; Murray supra at 500-501.)

On this foundation petitioner claims the right to obtain declaratory and injunctive relief against the Board and CDC. The continued use of aggravating factors in his case that were never found true beyond a reasonable doubt in his criminal trial is an "arbitrary and lawless state action." (Ibid., and Davis supra at 387.)

II

**PETITIONER IS ENTITLED TO A DECLARATION AND INJUNCTION PROHIBITING THE BOARD AND CDC FROM FINDING AGGRAVATING FACTORS THAT WERE NOT FOUND TRUE BEYOND A REASONABLE DOUBT DURING HIS CRIMINAL TRIAL PURSUANT TO THE SIXTH AND FOURTEENTH AMENDMENTS**

The United States Supreme Court recently held California's Determinate Sentencing Law (DSL) sentencing scheme to be unconstitutional because it violated a defendants Sixth Amendment right to have a jury, not a judge, determine all the facts of your offense, aggravating and mitigating, in support of the conviction and punishment. The DSL obliged the trial judge to find circumstances in aggravation to impose a more lengthy period of incarceration based upon the preponderance of the evidence, not beyond a reasonble doubt. The High Court stated that is where the constitutional violation occurs because, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (Cunningham v. California (2007) U.S. LEXIS 1324, *22; and People v. Sandoval (2007) Cal. LEXIS 7606, *10.)

The same holds true for DSL prisoners with an indeterminate sentence when they appear before the Board of Parole Hearings based

on the language in Penal Code §§'s 3041(a) and (b).

Penal Code §3041(a) states, "The board shall establish criteria for the setting of parole release dates and in doing so shall consider ... factors in mitigation and **aggravation of the crime.**"

Penal Code §3041(b) states, "The board shall set a release date unless it determines that the gravity of the current convicted offense ... requires a **more lengthy period of incarceration.**"

In In re Dannenberg (2005) 34 Cal.4th 1061, 1096 fn.16, the court explained what Penal Code §3041(a) and (b) means:

> "When the Board bases unsuitability on the circumstances of the commitment offense, it must cite 'some evidence' of **aggravating** facts beyond the minimum elements of that offense. (Rosenkrantz supra, 29 Cal.4th 616, 658, 683.)"

The Dannenberg court went further and explained that:

> "[T]he parole authority may credit evidence suggesting the inmate committed a greater degree of the offense than his or her conviction evidence. (Rosenkrantz supra, 29 Cal.4th 616, 678-679 [parole authority may credit evidence that one convicted only of second degree murder acted with premeditation and deliberation].)" (Ibid.)

With all due respect, isn't that exactly what the Cunningham Court said a California superior court judge cannot do based on the preponderance of the evidence because it deprives a defendant of his right to a criminal trial to establish these facts beyond a reasonable doubt???

To put that into context, petitioner had a court trial and was convicted of second degree murder. Second degree murder expresses that petitioner was not guilty of "premeditation and deliberation" beyond a reasonable doubt. (Penal Code §189.) However, the Dannenberg and Rosenkrantz courts are authorizing the Board to "credit evidence that one convicted only of second degree murder acted with premeditation and deliberation" based on "some evidence" a lower standard after

7

conviction which was based "beyond a reasonable doubt." Equally important, there are no **aggravating** factors listed in the POR except use of a deadly weapon for which petitioner already received a 2-year enhancement. (See exhibit 1, C415.) Petitioner claims this is a due process violation under the reasoning in Cunningham, therefore, and based on the facts of his case, declaratory and injunctive relief is warranted.

Further, the California Supreme Court endorses another procedural bar from Cunningham when they also held in Dannenberg and Rosenkrantz:

> "We explained that such a violation could occur, for example where no circumstances of the offense reasonably could be considered more **aggravated** than the minimum necessary to sustain a conviction for that offense." (Dannenberg supra at 1094-1095, and Rosenkrantz supra at 683.)

Again, with all due respect, the Cunningham Court held just the opposite: "Reasonableness, however, is not the touchstone of Sixth Amendment analysis." (Cunningham supra at *10.)

The California Supreme Court is authorizing the Board to deny parole when they find circumstances in aggravation that exceed the minimum necessary to sustain the conviction based on "reasonableness." However, that is exactly what the Cunningham Court told California they cannot do under the DSL without a jury trial. The reasoning was simple in that, under the DSL when you are convicted by a jury of a crime, that verdict only reflects the middle term or "minimum necessary to sustain the conviction for that offense." (Sandoval supra at *12.) The **aggravated** circumstances have to be found by a jury beyond a reasonable doubt to impose a "more lengthy period of incarceration."

As applied to petitioner's case, there were no aggravated

8

circumstances found in his case beyond the minimun necessary to sustain the conviction. (See exhibit 1, page C415.) Therefore, the Board should be prohibited from finding aggravated circumstances of the offense beyond the minimum necessary to sustain the conviction and then imposing a more lengthy period of incarceration based on "reason-ableness." Petitioner claims this is a due process violation under the reasoning in Cunningham and acknowledged in Sandoval, therefore, declaratory and injunctive relief is proper in this case.

Phrased another way, when petitioner walks out the door of his trial court with all his criminal proceedings in his hip pocket, and then walks through the door of his liberty interest parole hearing, (liberty interest will be discussed infra), if he does not retain all his criminal proceedings during his liberty interest parole hearing, i.e., no aggravated circumstances of the offense beyond the minimum necessary to sustain the conviction, then that would be a due process violation of fundamental core constitutional rights that were decided during his criminal process, i.e., Sixth and Fourteenth Amendments.

Finally, the Dannenberg court reenforces another contrary position to Cunningham when they held:

> "Moreover, as we have explained, section 3041 expressly instructs the Board to set an indeterminate life prisoner's parole release date--the equivalent of term-setting in such cases--unless it finds that the aggravated nature of the inmate's offense ... warranting longer incarceration for that inmate." (Dannenberg supra at 1097.)

"The equivalent of term-setting in such cases" as explained by the Dannenberg court's majority opinion (4 to 3 narrow margin), was explained in the dissenting opinion of that case as the exact same constitutional violation that occurred in Cunningham, but at that

9

point in time, California did not know it was a <u>Sixth</u> <u>Amendment</u>
violation.  The dissenting opinion explained it this way:

> "Moreover, this kind of ranking of an offense based on aggravating
> factors is what trial judges routinely are asked to do in making
> sentencing decisions.  (See § 1170, subd. (b): Cal. Rules of
> Ct., Rules for Criminal Cases in the Superior COurt, rule 4.413
> [factors for determining base terms in determinate sentences];")
> (Id. at 1107;`  see also <u>Sandoval</u> supra at *12.)

Therefore, under <u>Cunningham</u>, the foregoing analogy as applied
to petitioner and similarly situated indeterminate sentenced prisoners
is a constitutional violation.  If no aggravating facts were found
during your criminal proceedings, then surely the Board is prohibited
from making factual findings contrary to petitioner's trial court
regarding aggravating circumstances based on a fair reading of the
statute.  Penal Code §3041(a) directs the Board to "**consider** factors
in aggravation."  If none were found during your crimnal proceedings
then it would contrary to <u>Cunningham</u> for the Board to find them now.

Simply put, if a superior court judge is not obliged to find
circumstances in aggravation of the crime to impose a more lengthy
period of incarceration based on the preponderance of the evidence,
then how can the Board be obliged to find circumstances in aggravation of the
crime to impose a more lengthy period of incarceration, [i.e., "parole authority may
credit evidence that one convicted only of second degree murder acted
with premeditation and deliberation"], based on **reasonableness** which
can only be reviewed by "some evidence" is contrary to the holdings
in <u>Cunningham</u> regarding the constitutionality of the DSL.

Based on the facts of petitioner's case where no aggravated
circumstances were found during his criminal proceedings under the
<u>Sixth</u> and <u>Fourteenth</u> <u>Amendments</u>, petitioner respectfully requests
a declaration and injunction reenforcing those rights now.                    10

III

CALIFORNIA HAS A LIBERTY INTEREST PAROLE STATUTE THAT DOES NOT
AUTHORIZE THE BOARD TO FIND AGGRAVATING CIRCUMSTANCES OF THE OFFENSE

There is an additional reason why petitioner is entitled to re-
lief. That reason is provided by United States Supreme Court liberty
interest jurisprudence.

Central to any liberty interest analysis is the extent to which
governmental discretion to take away liberty has been cabined through
legislation. (See e.g., Connecticut Board of Pardons v. Dumschat
(1981) 452 U.S. 458, 465, ["The ground for a constitutional claim if
any, must be found in statutes or other rules defining the obiligations
of the (relevant) authority..."]; Bishop v. Wood (1976) 426 U.S. 341,
344.) In the parole context a convicted defendant may have a liberty
interest in an early release date if the discretion of the parole
authority is restricted by statute. (Greenholtz v. Nebraska (1979)
442 U.S. 1, 12; Board of Pardons v. Allen (1987) 482 U.S. 369, 381.)

California Penal Code §§'s 3041(a) and (b) vests petitioner and
all other California prisoners whose sentences provide for the possi-
bility of parole with a constitutionally protected liberty interest in
the receipt of a parole release date, a liberty interest that is pro-
tected by the procedural safeguards of the Due Process Clause. (Irons
v. Carey (9th Cir.2007) 479 F.3d 658, 662; Greenholtz supra at 12;
Allen supra at 377-78; In re Rosenkrantz (2002) 29 Cal.4th 616, 655.)

Penal Code §3041(a) provides in part that, "One year prior to the
inmate's minimum eligible parole release date the board shall normally
set a parole release date... The board shall establish criteria for
for the setting of parole release dates and in doing so shall consider
the number of victims of the crime for which the prisoner was

11

sentenced and other factors in mitigation or aggravation of the crime."
Penal Code §3041(b) provides in part that, "The board shall set a
release date unless it determines that the gravity of the current con-
victed offense is such that consideration of the public safety requires
a more lengthy period of incarceration..."

Obviously, the shall/unless formula equals a liberty interest.
(Greenholtz and Allen supra.) The question before this Court is what
extent governmental discretion to take away liberty has been cabined
through legislation, must be found in the statutes? (Dumschat and
Bishop supra.) The key word in Penal Code §3041(a) that **does not**
authorize the Board to **find** "factors in aggravation of the crime" is
"CONSIDER." The statute only authorizes the Board to consider, not
find, "factors is aggravation of the crime." Those factors must derive
from your criminal proceedings under the Sixth and Fourteenth Amendment.
Otherwise, you are facing a new trial at your liberty interest parole
hearing, thus making it not legitimate. Greenholtz specifically held
the liberty interest must be legitimate. (Passim.) How is petitioner's
liberty interest parole hearing legitimate when California claims the
the Board "is free to consider facts apart from those found true by a jury
or judge beyond a reasonable doubt." (In re Tripp (2007) 58 CR3d 64,
68.)

Petitioner has a liberty interest in "the receipt of a parole
release date" (Irons supra at 662), below the statutory maximum of life
set by the statutes of conviction and parole because absent a **finding**
"of aggravating facts beyond the minimum elements of that offense"
(Dannenberg supra at 1096, fn.16 citing Rosenkrantz supra at 658, 683),
the Board has no authority to impose a more lengthy period of
incarceration (Penal Code §§'s 3041(a) and (b)).                    12

Phased another way, the Board has always enjoyed broad discretion in parole matters. (Rosenkrantz and Dannenberg supra.) "However, that broad discretion to decide what facts may support [factors in aggravation] to determine [a more lengthy period of incarceration] in any particular case, does not shield a [parole] system from the force of our decisions. If the jury's verdict alone does not authorize [factors in aggravation], if, instead the [Board] must find an additional fact to impose [a more lengthy period of incarceration], the Sixth Amendment requirement is not satisfied." (Cunningham v. California (2007) U.S. LEXIS, *38, citing Blakely v. Washington (2004) 542 U.S. 296, 305.)

Under the California parole statutes, petitioner's stake in maintaining his trial court's verdict of no aggravating facts, (exhibit 1, page C415), during his liberty interest parole hearing will be as great, if not greater than, his stake during his trial safeguarded by the Sixth and Fourteenth Amendments because the Board's decision can deprive petitioner of his liberty. The importance of the liberty interest at stake need not be labored. In Speiser v. Randall (1958) 357 U.S. 513, 525, the Supreme Court called a criminal defendant's interest in liberty as "an interest of transcending value." In Allen supra at 373 n.3, the Supreme Court explained, "At stake in the parole release decision is a return to freedom, albeit conditional freedom; liberty from bodily restraint is at the heart of the liberty protected by the Due Process Clause."

In the context of criminal adjudication, the Supreme Court has struck a balance between the interests of defendants and the state in favor of the reasonable doubt standard of proof because, "it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter."    13

(Mullaney v. Wilbur (1975) 421 U.S. 684, 703-04, paraphrasing In re Winship (1970) 397 U.S. 358, 368, 372.) However, California says exactly the opposite, when they held in Dannenberg supra at 1096 fn.16,

> "The parole authority may credit evidence suggesting the inmate committed a **greater degree** of the offense than his or her conviction evidence. (Citing Rosenkrantz supra, 29 Cal.4th 616, 678-679, [parole authority may credit evidence that one convicted only of second degree murder acted with premeditation and deliberation].)" (Emphasis added.)

If this is not an example of a state redefining a crime as a parole factor in order to evade the constitutional mandate guaranteed by the Sixth and Fourteenth Amendments during criminal proceedings, then what is??? With all due respect, isn't that exactly what the Cunningham Court said a California superior court judge cannot do based on the preponderance of the evidence because it deprives a defendant of his right to a jury trial to establish these facts beyond a reasonable doubt?

Not surprisingly, "a parole hearing does not ordinarily provide a parole applicant a very good opportunity to prove his offense for second degree murder was not committed in an aggravated manner, or with premeditation or deliberation. Even if such evidence exists and the prisoner is willing to run the risk, his efforts to make such a showing will be seen as unwillingness to accept responsibility and therefore evidence of unsuitability." (In re Elkins (2006) 144 Cal. App.4th 475, 499.)

Additionally, during a parole hearing, who's burden is it to prove or disprove aggravating, premeditation and deliberation facts? Under Supreme Court Sixth Amendment cases, "a state must prove all elements of a criminal offense beyond a reasonable doubt, and could not constitutionally shift the burden of proving such elements to the defendant." (Mullaney supra.)

14

IV

**THE SUPERIOR COURT ERRED WHEN IT HELD A DSL TERM TO LIFE PRISONER IS NOT ENTITLED TO THE SAME SIXTH AND FOURTEENTH AMENDMENT RIGHTS DURING THEIR CRIMINAL PROCEEDINGS AS A DSL DETERMINATE SENTENCED PRISONER IS ENTITLED UNDER <u>CUNNINGHAM</u> AND <u>BLAKELY</u>**

The superior court denied the petition  by stating that:

"When a life term or top, is imposed, <u>Cunningham</u> and <u>Blakely</u> are inapplicable to the methods used to determine parole suitability. <u>Cunningham</u> and <u>Blakely</u> are concerned with going beyond the standard sentence into the area of an aggravated sentence." (Exhibit 8.)

Petitioner respectfully disagrees for a number of reasons.

(1) Petitioner is a DSL prisoner because his crime occurred after the DSL was enacted on July 1, 1977. Under equal protection, all DSL prisoners should be entitled to the same aggravated fact finding process by a jury, beyond a reasonable doubt. Otherwise, DSL term to life prisoners are not receiving the same Sixth and Fourteenth Amendment protections.

(2) The superior court held, "When a life term, or top, is imposed, <u>Cunningham</u> and <u>Blakely</u> are inapplicable to the methods used to determine parole suitability." However, the <u>Blakely</u> Court stated, "Of course indeterminate schemes involve judicial factfinding, in that a judge (like a parole board) may implicitly rule on those facts he deems important to the exercise of his sentencing discretion. But the facts do not pertain to whether the defendant has a legal right to a lesser sentence--and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." (<u>Blakely</u> at 124 S.Ct 2540.) California's liberty interest parole scheme **does** "impinge[ ] upon the traditional role of the jury," in that, "the facts do [ ] pertain to whether the [parole applicant] has a legal right to" 'the receipt of a parole release date' (<u>Irons</u> supra at 662), below the statutory maximum of life set by the statutes of conviction and parole

15

because absent a finding "of aggravating facts beyond the minimum elements of that offense," (<u>Dannenberg</u> supra at 1096 fn.16 citing <u>Rosenkrantz</u> supra at 658, 683), **the Board has no authority to impose a more lengthy period of incarceration according to Penal Code §§'s 3041 (a) and (b).**

(3)  The question before this Court is what extent governmental discretion to take away liberty has been cabined through legislation, must be found in the statutes? (<u>Dumschat</u> and <u>Bishop</u> supra.)  The key word in the statute that **does not** authorize the Board to **find** "factors in aggravation of the crime" is **"CONSIDER."** (Penal Code §3041(a).)  The statute only authorizes the Board to consider, not find, factors in aggravation of the crime.  Those factors must derive from your criminal proceedings safeguarded by the Sixth and Fourteenth Amendments.  Otherwise, you are facing a new trial at your liberty interest parole hearing thus making it not legitimate.  <u>Greenholtz</u> supra specifically held the liberty interest must be legitimate.

(4)  Finally, there are no aggravating factors listed in petitioner's POR except use of a deadly weapon for which he already received a 2-year enhancement. (See exhibit 1, C415.)  However, the government is now attaching aggravating factors to his crime that were never found true by **ANYONE**, i.e., A. The victim was particularly vulnerable, B. The crime included a deadly weapon, C. The victim feared for her life, D. The crime included the use of alcohol, and The crime involved great violence and great bodily harm. (Exhibits 4, 6, and 7.)  Petitioner claims this is a due process violation dating back at least a century because, "The touchstone of due process is protection of the individual against arbitrary action of government." (<u>Wolff v. McDonnell</u> (1974) 418 U.S. 539, 558, citing <u>Dent v. West Virginia</u>.)

16

**V.**                          **EVIDENTIARY HEARING**

Petitioner is requesting an evidentiary hearing on this matter based on all the foregoing reasons.

Additionally, how is it not a due process violation when the government, arbitrarily allows a Correctional Counselor I, to assign aggravating factors to petitioner's crime that **are not even listed in** petitioner's POR???

What qualifies a Correctional Counselor I to assign aggravating factors to petitioner's crime?  The only educational requirement for a Correctional Counselor I is an AA degree.  On the other hand, a judge has a BA degree, 4-years of law school,  . must pass the State Bar, and have years of practice as an attorney before enrollment in the judiciary academy for training.  But yet, Cunningham held explicitly that a superior court judge is not obliged to find circumstances in aggravation of the crime based on the preponderance of the evidence.  Then it must follow that a Correctional Counselor I cannot assign aggravating circumstances to petitioner's crime that are going to be fully considered by the Board!!!

Equally important, a Board commissioner or deputy commissioner has less    education or training than a superior court judge in the area of aggravating factors in a crime.  These examples regarding the Board and CDC demonstrate the "arbitrary action of government" surrounding California's parole scheme that cries out for judicial intervention. (See In re  Criscione (2007) Santa Clara County Superior Court, #71614, filed August 30, 2007.)

In sum, if the principles of Cunningham regarding aggravating fact finding by the jury protected by the Sixth Amendment does not apply to DSL term to life prisoners, then what does?

17

VI

## WHAT SIXTH AND FOURTEENTH AMENDMENT RIGHTS DO
## DSL TERM TO LIFE PRISONERS RETAIN AFTER CONVICTION

The state courts failed to answer the foregoing question during petitioner's habeas proceedings. Simply put, once petitioner walks out of the courtroom with all his criminal proceedings in his hip pocket, i.e., the findings of the court, the findings of the POR, the original indictment and the final abstract of judgment, if he does not retain all his criminal proceedings thereafter, that would be a due process violation of fundamental core constitutional rights that were decided during his criminal process protected by the Sixth and Fourteenth Amendments.

Petitioner is a DSL prisoner with a term to life sentence because his crime occurred after July 1, 1977. (See PC §1170.) The trial court found petitioner guilty of second degree murder and imposed a 15-year to life sentence with an additional 2-year gun enhancement. The trial court ordered a probation officer to submit a POR regarding petitioner and this crime. The POR found no circumstances in aggravation during this crime as noted by exhibit 1. During sentencing the trial judge made no additional aggravating fact finding. Now, 17-years later, CDC and the Board are applying aggravating facts to petitioner's crime. All petitioner wants to know is how?

All petitioner is asking for in this case is essentially the same thing that William Marbury was asking from the very beginning: **"the right of every individual to claim the protection of the law."** (Marbury v. Madison (1803) 5 U.S. 137, 163.)

How can any state erode or add aggravating facts to petitioner's crime after the fact, based on the Federal Constitutions protections?

///

18

## QUESTIONS PRESENTED FOR REVIEW

1.  Does placing aggravating fact finding within the Parole Board's province, violate petitioner's right to trial by jury safeguarded by Sixth and Fourteenth Amendments?

2.  When there are no aggravating circumstances listed in the POR can a Correctional Counselor I assign aggravating circumstances in the Board Report that is going to be considered by the Board without violating petitioner's due process?

3.  What Sixth and Fourteenth Amendment rights do DSL term to life prisoners retain regarding aggravating fact finding during their criminal proceedings when they appear before the Board?

### REMEDY

Petitioner has no other remedy save by writ of habeas corpus and respectfully requests a declaration and injunction from this Court prohibiting the Board and CDC from attaching aggravating facts to his crime.  Declare the rights of the parties.  Issue any other orders the Court deems necessary.  Retain jurisdiction until all orders are met.

### CONCLUSION

For all the foregoing reasons, the petition should be granted. I, verify under penalty of perjury that all the foregoing is true and correct.

Executed on date:  *2-24-08*

/s/ _____

O. Haro,  Pro Se

19

**EXHIBIT 1**

IN THE SUPERIOR COURT OF THE

STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,  )
                                      )
                         PLAINTIFF,  )
                                        )
          vs.  )
                                        )
ONESIMO MARIN HARO,     DEFENDANT,  )
                                        )
                                        )
                                        )

**FILED**

AUG 2 1 1990

GRACE K. YAMAKAWA
County Clerk
Santa Clara County
By _____

REPORT OF
PROBATION OFFICER
No.: 134834
August 14, 1990
R. Braughton, D.A.
A. Hernandez, Atty.

**FILMED**

---

## COURT DATA

SENTENCING COURT:    Honorable Robert P. Ahern

COURT OF CONVICTION:  Honorable Robert P. Ahern

CHARGE:  Section 187 of the Penal Code (Second Degree Murder)

        The allegations of Section 12022.5(a) of the Penal Code
        (Personal Use of a Firearm) and 1203.06 of the Penal Code
        (Probation Ineligibility) found true

DATE OF OFFENSE:  August 23, 1989

DATE OF ARREST:   August 23, 1989 (GPD)

CONVICTION:  Found Guilty by Court Trial, Bunnell Plea, on
          June 14, 1990

CONDITIONS:  None

REMAINING CHARGES:  None

DAYS IN CUSTODY:  357 actual days; 178ays - 4019 PC; 535tal days;
               presently in custody

AGE & DATE OF BIRTH:  52; June 11, 1938; La Yesca, Nayarit, Mexico

C484

In the Case of:  ONISIMO HARO
Charge:  12022.5(a) PC et al
<u>Info. No.: 134834</u>                           August 14, 1990


<u>CODEFENDANTS & STATUS</u>:  None


<u>SUMMARY OF OFFENSE</u>:

The following is the summary of Gilroy Police Department Crime
Report #89-005101 and statements made during the Preliminary
Examination in this matter.

On August 23, 1989, at approximately 2:00 a.m., officers of the
Gilroy Police Department responded to 495 Adams Court, Gilroy,
California, to investigate a possible shooting.

The investigating officers were met by relatives who indicated
the defendant and the 49-year-old victim, Maria Benavides Haro,
had both been shot with a handgun and were in the residence.
The officer observed the victim to have suffered several bullet
wounds in the abdomen and the defendant, a bullet wound to the
chest area.  As the victim was being transported to the hospital
she stated to the investigating officer, "My husband tried to
kill me."  The victim further stated that her husband had shot
her as he was jealous.  The defendant stated to investigating
officers that he shot his wife "because she does not love me, she
loves another."  Both the defendant and the victim were
transported to San Jose Hospital via helicopter where the victim
succumbed approximately 24 hours later.

Subsequent investigation including testimony from various family
members indicated the defendant and victim had been experiencing
marital difficulties for at least the past six months.  The
victim had mentioned getting a divorce and the defendant on
several occasions had made statements that he might do something
he might regret.  Family members had heard the defendant return
home on the evening in question and go to the victim's bedroom
where he engaged her in a conversation.  A short time later a
number of shots were heard with a long pause and then a final
shot being fired.

The investigating officers located a 38-caliber semiautomatic
handgun on the floor in the victim's bedroom.  The bed-sheets
contained blood stains and there were several bullet holes going
through the mattress.  Three empty shell casings were located on
the bed and an additional three empty brass casings on the floor.
Additional 38-caliber ammunition and an empty 38-caliber clip
with leather holster were found in the defendant's vehicle.

During the course of the investigation the officers were
presented with a letter written by the victim and addressed to
"American or Mexican Authorities."  In the letter the victim
indicated her life had been threatened by her husband and should
he carry out his threat she wished for him to be punished to the

-2-

C405

In the Case of:  ONISIMO HARO
Charge:  12022.5(a) PC et al
Info. No.: 134834                          August 14, 1990

full extent of the law, that he suffer life in prison without
parole.  The letter was dated May 5, 1985.

The Coroner's Report indicates the victim suffered seven bullet
wounds and the cause of death was listed as gunshot wounds to the
abdomen.

The defendant suffered an apparent self-inflicted gunshot wound
which lodged near his spine.  The projectile was later removed
and entered into evidence.

VICTIM'S STATEMENT:  (Appearance Unknown)

This officer has sent written correspondence to the oldest son of
the victim, Jaime Haro, 850 Wren Ave., Apt. #9, Gilroy,
California, 95020, informing him of his rights pursuant to
Section 1191.1 of the Penal Code and encouraging him or other
next of kin who wish to address the Court to contact this officer
or be present on the date set for sentencing.  Attempted
telephone contacts have been unsuccessful, however any
information gathered from the next of kin will be forwarded for
the Court's attention upon its receipt.

DEFENDANT'S STATEMENT:  (Requested-Not Received)

The following is a summary of statements made by the defendant
during a presentence interview conducted by the undersigned
officer utilizing the services of a Spanish interpreter.  The
defendant also informed this officer that he is illiterate and
was unable to prepare a written statement by himself.

The defendant states he does not remember the events which
occurred on the evening his wife was shot and killed.  He states
they had been experiencing marital difficulties and he had
discovered that his wife had taken a lover.  The defendant states
the victim "treated me like a dog" and "I worked hard to give her
a home."  He states he searched through the victim's clothing and
found a receipt where his wife had purchased a ring for $300
which she allegedly gave to her lover.

The defendant states he cannot remember the events because he had
combined five or six beers and a prescription medicine he was
taking for his nerves which he assumes must have effected his
memory.  The defendant states he does remember leaving work and
buying a "large beer" at a liquor store.  He states he later
stopped at a local bar and restaurant combination to look for his
cousin where he drank an additional five or six beers.  He states
when he left the restaurant he was feeling fine, however he
became dizzy as he was driving home.  Once at his residence, the

-3-

C406

In the Case of:  ONISIMO HARO
Charge:  12022.5(a) PC et al
Info. No.: 134834                              August 14, 1990

defendant states he only remembers speaking briefly with his
brother.

The defendant admits stabbing the mattress near where the victim
was lying on a previous occasion after an argument.  The
defendant states it was a "small cut" approximately 1 1/2 inches
long which he cut on the bed with his pocket knife.  He states he
was not trying to injure his wife, only to scare her.  The
defendant indicated he was surprised she had written a letter
concerning her fears he would harm her.

The defendant states he does not consume illegal substances and
was drinking more beer and tequila lately because of his family
problems.  The defendant states he would normally consume
alcoholic beverages after work and on weekends but not on a
regular basis.

The defendant feels he should be granted probation.  He states he
is aware of numerous instances wherein someone has killed a human
being and not been sent to State Prison.  The defendant states
he does not feel he is a danger to anyone and he will cooperate
with any orders from the Court.

DISCUSSION:

Judicial Council Rules 414, 421 & 423:  (Attached)

Enhancements:

It was found true that the defendant violated Section 12022.5(a)
of the Penal Code (Personally Used a Firearm) thereby allowing
the period of imprisonment to be enhanced by two years.

Case Evaluation:

Appearing before the Court for sentencing is a 52-year-old
normally employed defendant who was found Guilty by Court Trial
of Second Degree Murder via the use of a Handgun.  The
defendant shot and killed his wife of 28 years with a handgun
after he suspected her of having an illicit affair.

The defendant is ineligible for a probation grant pursuant to
Section 1203.06 of the Penal Code.  The sentence mandated by law
is quite clear concerning the defendant's actions in the instant
offense.  The defendant has willfully taken the life of another
human being.  Sadly in retrospect, the victim was aware that the
defendant might physically harm her and neither the victim, nor
the defendant sought assistance from religious or family service
agencies.

-4-

In the Case of:  ONISIMO HARO
Charge:  12022.5(a) PC et al
Info. No.: 134834                    August 14, 1990

The defendant's actions appear situational and he appears
unlikely to find himself in a similar circumstance considering
his age and the projected length of his sentence.

SUGGESTED TERM:

| CRIME | MIT | AGG | RANGE | ENHANCEMENT | TOTAL TERM |
|-------|-----|-----|-------|-------------|------------|
| CT 1<br>187PC<br>INDETERMINATE<br>SENTENCING LAW | | | 15 to LiFe | + 2YRS C/S<br>(12022.5(a)PC) | = 17 YRS TO LIFE |

187-2d
PI 193 PC

-5-

C408

In the Case of: ONISIMO HARO
Charge: 12022.5(a) PC et al
Info. No.: 134834           August 14, 1990

RECOMMENDATION:

1.    Probation be denied.

2.    The defendant be committed to the California Department of
Corrections for 17 years to life.

3.    The defendant be advised of a Parole period of from five (5)
years to Life.

4.    A Restitution Fine of not more than $10,000.00 be imposed
pursuant to Section 13967 of the Government Code.

NOTE: Attorney's fees if appropriate.

Respectfully submitted,

PEDRO R. SILVA, Chief
Probation Officer

Michael L. Johnson, Deputy
Probation Officer

MLJ/kf
Attachments

Reviewed by:

Thomas J. Fox
Supervising Probation
Officer - Ext. 2504

The above report has been read and considered by the Court.

ROBERT P. AHERN
Judge of the Superior Court
Santa Clara County, California

-6-

C409

*Onesimo Faro*
*# 134834*

Checked if
Applicable

## RULE 421:  CIRCUMSTANCES IN AGGRAVATION

(a)  Facts relating to the crime, including the fact that:

( )  (a)(1)  The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under Section 12022.7.

( )  (a)(2)  The defendant was armed with or used a weapon at the time of the commission of the crime, whether or not charged or chargeable as an enhancement under Section 12022 or 12022.5.  *Charged*

( )  (a)(3)  The victim was particularly vulnerable.

( )  (a)(4)  The crime involved multiple victims.

( )  (a)(5)  The defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission.

( )  (a)(6)  The defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process.

( )  (a)(7)  The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed.

( )  (a)(8)  The planning, sophistication or professionalism with which the crime was carried out, or other facts, indicated premeditation.

( )  (a)(9)  The defendant used or involved minors in the commission of the crime.

( )  (a)(10) The crime involved an attempted or actual taking or damage of great monetary value, whether or not charged or chargeable as an enhancement under Section 12022.6.

( )  (a)(11) The crime involved a large quantity of contraband.

( )  (a)(12) The defendant took advantage of a position of trust or confidence to commit the offense.

(b)  Facts relating to the defendant, including the fact that:

( )  (b)(1)  He has engaged in a pattern of violent conduct which indicates a serious danger to society.

( )  (b)(2)  The defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile are numerous or of increasing seriousness.

( )  (b)(3)  The defendant has served prior prison terms whether or not charged or chargeable as an enhancement under Section 667.5.

( )  (b)(4)  The defendant was on probation or parole when he committed the crime.

( )  (b)(5)  The defendant's prior performance on probation or parole was unsatisfactory.

( )  None

0415

1085 REV 9/83

A-9

**EXHIBIT 2**

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

**(ENDORSED)**

**F I L E D**

THE PEOPLE OF THE STATE OF CALIFORNIA,

                        Plaintiff,

        Against

ONESIMO MARIN HARO

                    Defendant(s),

January 16, 1990

GRACE K. YAMAKAWA
Deputy Clerk
Santa Clara County

BY _____ DEPUTY

CEN  8938797

_____ / INFORMATION NO. 134834

COUNT ONE

The District Attorney of the County of Santa Clara, State of
California, hereby accuses ONESIMO MARIN HARO of a FELONY, to wit:  a
violation of CALIFORNIA PENAL CODE SECTION 187 (MURDER), in that on
or about the 23rd day of August, 1989, in the County of Santa Clara,
State of California, the said defendant(s) did unlawfully and with
malice aforethought, kill MARIA BENAVIDEZ HARO, a human being.

It is further alleged that at the time of and in the commission and
attempted commission of the foregoing offense, the said defendant,
ONESIMO MARIN HARO, personally used a firearm, to wit:  a HANDGUN,
within the meaning of Sections 12022.5(a) and 1203.06 of the Penal
Code.

                                   LEO HIMMELSBACH
                                   District Attorney

102526

   gg  G/GPD  F8940307

156j  (30)

                         By _____
                         ROD L. BRAUGHTON/D72
                         Deputy District Attorney

C077

**EXHIBIT 3**

DEPT. No. 2    CASE NO. 134834

**FILMED**

## In the Superior Court of the State of California

IN AND FOR THE _____ COUNTY OF Santa Clara

ABSTRACT OF JUDGMENT
(Commitment to State Prison as provided by Penal Code Section 1213.5)

| | |
|---|---|
| The People of the State of California, | Hon. ROBERT P. AHERN |
| | (Judge of Superior Court) |
| vs | R. BRAUGHTON |
| | (District Attorney) |
| ONESIMO MARIN HARO  Defendant | A. HERNANDEZ |
| | (Counsel for Defendant) |

This certifies that on the 21st day of August, 1990 judgment of conviction of the above-named defendant was entered as follows:

In Case No. 134834 _____ Count No. ONE _____ he was convicted by COURT ; on his plea of (Court or Jury)

NOT GUILTY _____ (guilty, not guilty, former conviction or acquittal, once in jeopardy, not guilty by reason of insanity); of the crime of MURDER IN THE SECOND DEGREE

(Identification of crime and degree. If any, including fact that it constitutes a second or subsequent conviction of same offense if that affects the sentence and if under Section 396 of the Penal Code whether victim suffered bodily harm);

in violation of Section 187 of the California Penal Code
(Reference to Code or Statute, including Section and Sub-section);

with prior convictions charged and proved or admitted as follows:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|------|------------------|-------|-------------|
| | | | |
| | | | |
| | | | |
| | | | |

Defendant WAS _____ charged and admitted being, or was found to have been armed with a deadly weapon at the time (was) (was not)

of commission of the offense, or a concealed deadly weapon at the time of his arrest within the meaning of Penal Code Sections 969c and 3024 12022.5(a)

7934 REV 8/74

6453

Defendant __WAS NOT__ adjudged a habitual criminal within the meaning of Sub-division __a or b__ of
(was) or (was not)                                                                                         (a) or (b)

Section 644 of the Penal Code; and the defendant __IS NOT__ a habitual criminal in accordance with Sub-division (c)
(is) or (is not)

of that Section.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said defendant be punished by imprison-
ment in the State Prison of the State of California for the term provided by law, and that he be remanded to the Sheriff
of the _____ County of __SANTA CLARA__ and by him delivered to the Director of Corrections of the
State of California at the place hereinafter designated.

It is ordered that sentences shall be served in respect to one another as follows. Count 1 PC187 (Second
(Note whether concurrent or consecutive as to each count):

degree murder) State Prison for a term of 15 years to life with a two year

consecutive enhancement on PC12022.5(a) allegation for a total term of

17 years to life.

and in respect to any prior incomplete sentence (s) as follows: _____
(NOTE whether concurrent or consecutive as to all incomplete sentence from other jurisdictions):

FURTHER ORDERS: Pay $100 restitution fine

CREDIT FOR TIME SERVED: 364 actual days, 182 days pursuant PC4019

TOTAL: 546 days

To the Sheriff of the _____ County of __Santa Clara__ and to the Director of Corrections:

Pursuant to the aforesaid judgment, this is to command you, the said Sheriff, to deliver the above-named defendant into the
custody of the Director of Corrections at __San Quentin, California__
at your earliest convenience.

Witness my hand and seal of said court

this __22nd__ day of __August, 1990__

__GRACE YAMAKAWA__ _____ Clerk

by __L. MOORMAN__    _L. Moorman_ _____ Deputy

State of California,
                County of __SANTA CLARA__ } ss.

I do hereby certify the foregoing to be a true and correct abstract of the judgment duly made
and entered on the minutes of the Superior Court in the above entitled action as provided by Penal
Code Section 1213.
Attest my hand and seal of the said Superior Court this __22nd__ day of __August__ 19__90__

__GRACE YAMAKAWA__
County Clerk and Ex-officio Clerk of the Superior Court of the State of California in and for the
_____ County of __SANTA CLARA__

The Honorable: __ROBERT P. AHERN__

Judge of the Superior Court of the State of California, in and for the _____ County of

__SANTA CLARA__

Note: If probation was granted in any sentence of which abstract of judgment is certified, attach a
minute order reciting the fact and imposing sentence or ordering a suspended sentence into effect.    C454

7856 REV 8/76

REPORT - INDETERMINATE SENTENCE, OTHER SENTENCE CHOICE

FORM CR 291

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

COURT I.D.  4 3 1

BRANCH SAN JOSE

PEOPLE OF THE STATE OF CALIFORNIA versus
DEFENDANT: ONESIMO MARIN HARO
AKA:

[X] PRESENT
[ ] NOT PRESENT

CASE NUMBER(S)  134834  -A
-B

REPORT OF: [ ] DEATH SENTENCE    AMENDED    -C
[X] INDETERMINATE SENTENCE    REPORT [ ]    -D
[ ] OTHER SENTENCE CHOICE    -E

| DATE OF HEARING (MO/DAY/YR) | DEPT NO. | JUDGE | CLERK |
|---|---|---|---|
| 8-21-90 | 2 | ROBERT P. AHERN | L. MOORMAN |

| REPORTER | COUNSEL FOR PEOPLE | COUNSEL FOR DEFENDANT | PROBATION NO. OR PROBATION OFFICER |
|---|---|---|---|
| CAROLYN WILLEFORD | ROD BRAUGHTON | ARTURO HERNANDEZ | WAYNE DUTTON |

1. DEFENDANT WAS CONVICTED OF THE COMMISSION OF THE FOLLOWING FELONIES (OR ALTERNATE FELONY/MISDEMEANORS).

[ ] ADDITIONAL COUNTS ARE LISTED ON ATTACHMENT _____ (NUMBER OF PAGES)

| • COUNT | CODE | SECTION NUMBER | CRIME | YEAR OR DATE COMMITTED | DATE OF CONVICTION MO | DAY | YEAR | JURY TRIAL | COURT TRIAL | PLEA | 664 STW |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC | 187 | Second Degree Murder | 89 | 06 | 14 | 90 | X | | | |

2. ENHANCEMENTS (charged and found true) TIED TO SPECIFIC COUNTS (mainly in the §12022-series) including WEAPONS, INJURY, LARGE AMOUNTS OF CONTROLLED SUBSTANCES, BAIL STATUS, ETC.: For each count list enhancements horizontally. DO NOT LIST enhancements charged but not found true or stricken under §1385. DO NOT LIST TIME imposed. For indeterminate terms, report enhancements and time imposed for them on the abstract.

| Count | Enhancement | | Enhancement | | Enhancement | | Enhancement | | Enhancement | |
|---|---|---|---|---|---|---|---|---|---|---|
| 01 | PC12022.5 | | | | | | | | | |

3. ENHANCEMENTS charged and found true FOR PRIOR CONVICTIONS OR PRIOR PRISON TERMS (mainly §667-series) and OTHER. List all enhancements based on prior convictions or prior prison terms charged and found true. If 2 or more under that same section, repeat it for each enhancement (e.g. if 2 non-violent prior prison terms under §667.5(b) list §667.5(b) 2 times. DO NOT LIST enhancements not found true. Also enter here any enhancement not provided for in section 2. DO NOT LIST TIME imposed. For indeterminate terms, report enhancements and time for them on the abstract.

| Enhancement | | Enhancement | | Enhancement | | Enhancement | | Enhancement | |
|---|---|---|---|---|---|---|---|---|---|
| Enhancement | | Enhancement | | Enhancement | | Enhancement | | Enhancement | |

4. [ ] Defendant was sentenced TO DEATH on counts _____

5. [X] Defendant was sentenced to State Prison for an indeterminate term:
   A. [X] For LIFE, or a term such as 15 or 25 years to life, WITH POSSIBILITY OF PAROLE on counts 1
   B. [ ] For LIFE WITHOUT the possibility of parole on counts _____
   C. [ ] For other term prescribed by law on counts _____ . (Life Terms on "A" and "B".)

6. [ ] Counts _____ are alternate felony/misdemeanors and were DEEMED MISDEMEANORS.
   A term in jail [ ] was [ ] was not ordered.

7. [ ] For counts _____ the defendant was placed on FELONY probation.
   A. (1) [ ] Sentence pronounced and execution of sentence was suspended; or
      (2) [ ] Imposition of sentence was suspended.
   B. Conditions of probation included [ ] Jail Time [ ] Fine

*Probation denied advised parole/ appeal rights*

*Total time imposed: 17 years to life*

8. [X] Other dispositions
   A. [ ] Defendant was committed to California Youth Authority.
   B. [ ] Proceedings suspended, and defendant was committed to California Rehabilitation Center.
   C. [ ] Proceedings suspended, and defendant was committed as a Mentally Disordered Sex Offender.
   D. [ ] Proceedings suspended, and defendant was committed as mentally incompetent.

[ ] Formal Probation [ ] Granted _____ years [ ] For period co-terminous with Jail Sentence _____ [ ] Defendant committed to _____ [ ] Advised of Appeal Right
[ ] County Jail _____ with credit for time served of _____ days [ ] Consecutive/Concurrent _____ [ ] Pre-Processing _____
[ ] Jail sentence to be served on Weekend Work Program [ ] Weekend/s _____ [ ] Work Furlough Recommended [ ] No Programs
[ ] Jail sentence stayed until _____ at _____ M. [ ] Review date _____ in Department _____
[ ] Jail sentence suspended pending completion of Commun. Altern./Elect. Monit. Prgm _____ [ ] Perform _____ hours uncomp. commun. service work
[X] Restitution Fine $ 100 [ ] Drug Program Fee $ _____ [ ] Alcohol Education Fee $ _____ [ ] Fine $ _____ [ ] Penalty $ _____ [ ] Concurrent w/sentence at $ _____ / day
[ ] Lab Fee $ _____ [ ] Attorney Fees ordered $ _____ [ ] PC1202.5 Fee $ _____ [ ] Probation Costs _____ [ ] Other Fees _____
[ ] _____ Counseling [ ] No Alcohol/drugs for where sold [ ] Consume Alcohol/Drug Prgm _____ [ ] Release to representative _____
[ ] Submit to search/testing [ ] Not own/possess deadly/dangerous weapons [ ] Weapon ordered destroyed [ ] Restitution _____
[ ] Driver's License suspended/revoked _____ [ ] Restricted _____ [ ] Complete Multiple Offender Prgm/First Offender _____
[X] OTHER ORDERS: CREDIT TIME SERVED: 364 actual days, 182 days pursuant PC4019
    TOTAL: 546 days

Criminal Proceedings having been previously suspended [ ] Matter submitted on report of Dr. _____ [ ] Court finds Defendant [ ] a Narcotic Drug Addict
[ ] Incompetent [ ] Insane Defendant committed to [ ] California Rehabilitation Center under [ ] 3051 WI [ ] 3050 WI _____ State Hosp. [ ] 1370 PC [ ] 1026 PC
On Motion of the [ ] People [ ] Defendant [ ] Court orders _____ dismissed

0455

MINUTES SENTENCING REPORT INDETERMINATE SENTENCING

# EXHIBIT 4

1

# INMATE COPY
## LIFE PRISONER EVALUATION
### INITIAL PAROLE CONSIDERATION
### HEARING FOR WEEK OF MARCH 19, 2001

I.

## COMMITMENT FACTORS:

A.     LIFE CRIME: Inmate Haro was received into the California
Department of Corrections from Santa Clara County on
08/29/90 for PC 187 (Murder 2nd Degree) with PC 12022.5(A)
(Use of Firearm) Enhancement. "S" received a 15 Year to LIFE
term with a 2 Year Enhancement. MEPD: 12/23/00. The
weapon used was a .38 caliber handgun. Victim: Maria
Benavides Haro, age 49.

1.     Summary of Crime: On 08/23/89 at approximately 2:00
a.m. at 495 Adams Court, Gilroy, California, the defendant
(inmate Haro, E-66727) entered the bedroom of the victim,
Maria Benavides Haro, and shot her seven times in the
abdomen with a .38 caliber semi-automatic handgun.

Upon responding to the crime scene, the investigating officers
were met by relatives who indicated that both the defendant,
and the victim, had been shot by a handgun and both victim
and defendant were in the residence.

The responding officers observed the victim to have sustained
several bullet wounds to the abdomen.

While enroute to San Jose Hospital, the victim (Maria
Benavides Haro) stated to one of the investigating police
officers, "My husband tried to kill me." (See Probation Officers
Report, page 2) Furthermore, the victim stated her husband
had shot her because he was jealous. (See Probation Officers
Report, page 2)

Also, while enroute to San Jose Hospital, the defendant
(inmate Haro, E-66727) stated to one of the investigating police
officers that he shot his wife, "because she does not love me,
she loves another". (See Probation Officers Report, page 2)
The victim (Maria Benavides Haro) died on 08/30/90
approximately 24 hours after arriving at San Jose Hospital,

NAME: HARO, ONESIMO
CDC NUMBER: E-66727

LIFE PRISONER EVALUATION
INITIAL PAROLE CONSIDERATION
HEARING FOR THE WEEK OF MARCH 19, 2001
NAME: HARO, ONESIMO      CDC NUMBER: E-66727
PAGE 2

with the cause of death being gunshot wounds to the abdomen. (See Probation Officers Report, page 3)

During the course of the investigation, the investigating officers found a letter written by the victim addressed to either the American or Mexican Authorities. The letter stated, in short, that the victim (Maria Benavides Haro) had received several threats against her life from her husband, the defendant (inmate Onesimo Haro). The victim requested should the defendant (Onesimo Haro) carry out those threats, that he be punished to the full extent of the law, LIFE without the possibility of parole (See Probation Officers Report, page 2-3). It is noted during the commitment offense, the defendant sustained a self-inflicted gunshot wound to his chest, which lodged near his spine (See Probation Officers Report, page 3). (Source: Santa Clara County Probation Officers Report dated 08/14/90)

2.    Prisoner's Version: During an interview conducted on 12/18/00, with the assistance of CCI-G. DeOchoa (translator), inmate Haro gave the following account of his incarcerated offense: On 08/22/89 after getting off work at approximately 6:00 p.m., "S" had a large beer with some friends in the parking lot. "S" then drove to a restaurant/bar (name unknown) and had five to six more beers. "S" claims friends were buying him beers, for he didn't have much money. Furthermore, "S" claims he didn't normally drink that much, but was drinking alcohol more regularly due to his marital problems. "S" claims he remembers getting into his car and driving home later that night. "S" claims he remembers being extremely dizzy while driving home that night. "S" believes the dizziness was caused by the combination of his alcohol intake and his taking of prescription medication (name of medication unknown/nerve medication). "S" claims he doesn't remember anything else, until later the next day, 08/23/89. "S" claims he was awakened by a deputy, Enrique Huerta, who claimed "S" killed his girlfriend, "S's" wife.

"S" went on to state he was having marital problems prior to his commitment offense. "S" stated he suspected his wife of having an affair. "S" further stated that he searched through his wife's personal belongings

3

and found a receipt for $379.00 for a men's ring, which "S" assumed his wife purchased for her lover. "S" claims he wished he would have hired a private investigator to follow his wife. "S" claims he bought a housed for his wife, for he was in love with her. "S" further stated he worked two jobs, so his wife wouldn't have to work outside of the home.

When "S" was asked if he was remorseful about his instant offense, or if he felt the crime was justified? "S" claimed he was sorry and that he would never do it again, "S" claims he regrets the way things happened. "S" was remorseful in that his children's mother is now dead and that one of his five children refuse to communicate with him. Furthermore, "S" admits that the crime was wrong, but doesn't understand why he received a LIFE sentence, for the crime wasn't premeditated.

B.   AGGRAVATING/MITIGATING CIRCUMSTANCES:

    1.   Aggravating Factors:

        A.   Victim was particularly vulnerable in that she was "S's" wife and they shared the same residence.

        B.   The crime included a deadly weapon, to wit, a handgun.

        C.   The victim feared for her life, for she left a letter to the authorities (either U.S. or Mexican) stating that the defendant had made several threats against her life.

        D.   The crime included the use of alcohol, noting the defendant acknowledged being under the influence of alcohol.

    2.   Mitigating Factors:

        A.   The defendant has a minor history of criminal behavior.

**EXHIBIT 5**

## PETITIONER'S DECLARATION IN SUPPORT

I, ONESIMO HARO, declare that:

1.    I am the petitioner in this case and if called to testify to the matters set forth in the petition I will gladly do so.

2.    I am presently incarcerated in Avenal State Prison in Avenal California, in the County of Kings where this declaration was executed on the date below.

3.    On March 20, 2001, I appeared before the Board for my initial parole hearing.  I was denied parole based primarily on the commitment offense; for 3-years.

4.    On July 21, 2004, I appeared before the Board for a subsequent parole consideration hearing.  I was denied parole for 3-years again, based primarily on the commitment offense.

5.    On July 23, 2007, I was scheduled to appear before the Board for another subsequent parole consideration hearing.  This parole hearing was postponed for some unknown reason.

6.    All the exhibits that I have provided in this petition are authentic.

I declare under penalty of perjury under the laws of the State of California that all the foregoing is true and correct.

Executed on date:  *2-24-08*

/s/_____*O. Haro*_____
ONESIMO HARO, Declarant

# EXHIBIT 6

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #1
FEBRUARY 2004 CALENDAR

C-FILE

HARO, O.                                                    CDC#E-66727


I.    COMMITMENT FACTORS:

   A.    LIFE CRIME:

   Superior Court of Santa Clara County, Case #134834, Count 1: SECOND DEGREE MURDER,
   Penal Code 187 (A). Count 1: Sentenced 15 Years to Life plus 2 Years for Penal Code 12022.5,
   use of firearm, for a total of 17 Years to LIFE. Received into the California Department of
   Corrections on 8/29/90 with a Minimum Eligible Parole Date (MEPD) of 12/23/00. Victim:
   Maria Benavides Haro; Age: 49. Weapon: .38-caliber semiautomatic handgun. All relevant
   documents from previous hearings including the transcripts and arrest reports have been
   considered and that information appears valid.

   1.    Summary of Crime:

   The following summary of the crime was composed from court documents, probation
   officers reports, arresting officer's reports and prior hearing documentation:

   On the morning of August 23, 1989, at approximately 2:00 a.m., officers of the Gilroy Police
   Department responded to 495 Adams Court, Gilroy, California, to investigate a possible
   shooting. The investigating officers were met by relatives who indicated the defendant and
   the 49-year-old victim, Maria Benavides Haro, had been shot with a handgun and were in the
   residence. The officer observed the victim to have suffered several bullet wounds in the
   abdomen and the defendant, a bullet wound to the chest area. As the victim was being
   transported to the hospital she stated to the investigating officer, "My husband tried to kill
   me." The victim further stated that her husband had shot her as he was jealous. The
   defendant stated to investigating officers that he shot his wife "because she does not love me,
   she loves another." Both the defendant and the victim were transported to San Jose Hospital
   via helicopter where the victim succumbed approximately 24 hours later.

   Subsequent investigation including testimony from various family members indicated the
   defendant and victim had been experiencing marital difficulties for at least the past six
   months. The victim had mentioned getting a divorce and the defendant on several occasions
   had made statements that he might do something he might regret. Family members had
   heard the defendant return home on the evening in question and go to the victim's bedroom
   where he engaged her in a conversation. A short time later a number of shots were heard
   with a long pause and then a final shot being fired.

SUBSEQUENT PAROLE CONSIDERATION HEARING #1

HARO, O.                                          CDC#E-66727

The investigating officers located a 38-caliber semiautomatic handgun on the floor in the victim's bedroom. The bed-sheets contained blood stains and there were several bullet holes going through the mattress. Three empty shell casings were located on the bed and an additional three empty brass casings on the floor. Additional 38-caliber ammunition and an empty 38-caliber clip with leather holster were found in the defendant's vehicle.

During the course of the investigation the officers were presented with a letter written by the victim and addressed to "American or Mexican Authorities." In the letter the victim indicated her life had been threatened by her husband and should he carry out his threat she wished for him to be punished to the full extent of the law, that he suffer life in prison without parole. The letter was dated May 5, 1985.

The Coroner's Report indicates the victim suffered <u>seven</u> bullet wounds and the cause of death was listed as gunshot wounds to the abdomen.

The defendant suffered an apparent self-inflicted gunshot wound which lodged near his spine. The projectile was later removed and entered into evidence.

2. **Prisoner's Version:**

This interview was conducted with the services of Certified Interpreter Correctional Officer S. Aguirre. Prior to this report, Haro was given the opportunity to change or revise his version of the crime. Haro's last Parole Consideration Hearing Report is dated January 26, 2001. Haro stated that his version of the crime has not changed from the last report that notes the following: Haro stated that on 08/22/89 after getting off work at approximately 6:00 p.m., he had a large beer with some friends in the parking lot. He then drove to a restaurant/bar (name unknown) and had five to six more beers. Haro claims friends were buying him beers, because he didn't have much money. Furthermore, Haro claimed that he didn't normally drink that much, but was drinking alcohol more regularly due to his marital problems. Haro claims he remembers getting into his car and driving home later that night. He indicated that he remembers being dizzy while driving home that night. He believes the dizziness was caused by the combination of his alcohol intake and his taking of prescription medication (name of medication unknown/nerve medication). Haro stated that he doesn't remember anything else, until later the next day, on 08/23/89. He said he was awakened by a deputy, Enrique Huerta, who told him that he killed his wife. Haro went on to state he was having marital problems prior to his commitment offense. Haro stated he suspected his wife of having an affair. He indicated that he searched through his wife's personal belongings and found a receipt for $379.00 for a man's ring. He assumed that she purchased it for her lover. Haro claims that he wished that he would have had a private investigator follow his wife. He claimed that he bought a house for his wife, because he was in love with her. Haro further stated that he worked two jobs, so his wife wouldn't have to work outside the home.

SUBSEQUENT PAROLE CONSIDERATION HEARING #1

HARO, O.                                                                    CDC#E-66727

Haro was asked if he was remorseful about the offense, or if he felt the crime was justified? He claimed he was sorry and that he would never do it again. Haro claims he regrets the way things happened. He was remorseful in that his children's mother is now dead and that one of his five children refused to communicate with him. Furthermore, Haro admits that the crime was wrong, but doesn't understand why he received a life sentence because the crime wasn't premeditated.

B.    **AGGRAVATING/MITIGATING CIRCUMSTANCES:**

   1.   **Aggravating Factor:**

     a.   The crime involved great violence and great bodily harm resulting in the death of a human being.

     b.   The defendant was armed with or used a weapon at the time of the commission of the crime which was charged as an enhancement under PC 12022.5.

   2.   **Mitigating Circumstances:**

     a.   The defendant has an insignificant record of prior criminal conduct.

C.    **MULTIPLE CRIMES:**

None

II.   **PRECONVICTION FACTORS:**

A.    **JUVENILE RECORD:**

No juvenile record noted.

HARO, O.          E-66727          AVENAL STATE PRISON          FEBRUARY 2004

**EXHIBIT 7**

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #2
JULY 2007 CALENDAR

HARO, O                                                                                    E-66727

I.    COMMITMENT FACTORS:                    INMATE COPY

A.    Life Crime:

Superior Court of Santa Clara County, Case #134834, Count 1: SECOND DEGREE MURDER, Penal Code
187 (A). Count 1: Sentenced 15 Years to Life plus 2 Years for Penal Code 12022.5, Use of Firearm, for a
total of 17 Years to Life. Received into the California Department of Corrections on 08/29/90 with a Minimum
Eligible Parole Date (MEPD) of 12/23/00. Victim: Maria Benavides Haro; Age: 49. Weapon: .38-caliber
semiautomatic handgun. All relevant documents from previous hearings including the transcripts and arrest
reports have been considered and that information appears valid.

1.    Summary of Crime:

The following summary of the crime was composed from court documents, probation officers reports,
arresting officer's reports and prior hearing documentation:

On the morning of August 23, 1989, at approximately 2:00 a.m., officers of the Gilroy Police
Department responded to 495 Adams Court, Gilroy, California, to investigation a possible shooting.
The investigating officers were met by relatives who indicated that Haro and the 49 year old victim,
Maria Benavides Haro, had been shot with a handgun and were in the residence. The officer
observed the victim to have suffered several bullet wounds in the abdomen and Haro, a bullet wound
to the chest area. As the victim was being transported to the hospital she stated to the investigating
officer, "My husband tried to kill me." The victim further stated that her husband had shot her as he
was jealous. Haro stated to investigating officers that he shot his wife "because she does not love
me; she love another." Both Haro and the victim were transported to San Jose Hospital via helicopter
where the victim succumbed approximately 24 hours later.

Subsequent investigation, including testimony from various family members, indicated Haro and
victim had been experiencing marital difficulties for at least the past six months. The victim had
mentioned getting a divorce and Haro on several occasions had made statements that he might do
something he might regret. Family members had heard Haro return home on the evening in
questions and go to the victim's bedroom where he engaged her in a conversation. A short time later
a number of shots were heard with a long pause and then a final shot being fired.

SUBSEQUENT PAROLE CONSIDERATION HEARING #2
JULY 2007
PAGE 2

The investigating officers located a 38-caliber semiautomatic handgun on the floor in the vicitm's bedroom. The bed-sheets contained blood stains and there were several bullet holes going through the mattress. Three empty shell casings were located on the bed and an additional three empty brass casings on the floor. Additionally 38-caliber ammunition and an empty 38-caliber clip with leather holster were found in Haro's vehicle.

During the course of the investigation, the officers were presented with a letter written by the victim and addresses to "American or Mexican Authorities." In the letter the victim indicated her husband had threatened her life and should he carry out his threat she wished for him to be punished to the full extent of the law, that he suffer life in prison without parole. The letter was dated May 5, 1985.

The Coroner's Report indicates the victim suffered seven bullet wounds and the cause of death was listed as gunshot wounds to the abdomen.

Haro suffered an apparent self-inflicted gunshot wound, which lodged near his spine. The projectile was later removed and entered into evidence.

2.    Prisoner's Version:

This interview was conducted with the services of Certified Interpreter Correctional Counselor G. Aguirre. Prior to this report, Haro was given the opportunity to change or revise his version of the crime. Haro's last Parole Consideration Hearing Report is dated January 26, 2001. Haro stated that his version of the crime has not changed from the last report that notes the following: Haro stated on 08/22/89 after getting off work at approximately 6:00 p.m., he had a large beer with some friends in the parking lot. He then drove to a restaurant/bar (name unknown) and had five to six more beers. Haro claims friends were buying him beers, because he didn't have much money. Furthermore, Haro claimed that he didn't normally drink that much, but was drinking alcohol more regularly due to his martial problems. Haro claims he remembers being dizzy while driving home that night. He believes the dizziness was caused by the combination of his alcohol intake and his taking of prescription medication (name of medication unknown/nerve medication). Haro stated that he doesn't remember anything else, until later the next day, on 08/23/89. He said he was awakened by a deputy, Enrique Huerta, who told him that he killed his wife. Haro went on to state he was having marital problems prior to his commitment offense. Haro stated he suspected his wife of having an affair. He indicated that he searched through his wife's personal belongings and found a receipt for $379.00 for a man's ring. He assumed that she purchased it for her lover. Haro claims that he wished that he would have had a private investigator follow his wife. He claimed that he bought a house for his wife, because he was in love with her. Haro further stated that he worked two jobs, so his wife wouldn't have to work outside the house.

Haro was asked if he was remorseful about the offense, or if he felt the crime was justified. He

SUBSEQUENT PAROLE CONSIDERATION HEARING #2
JULY 2007
PAGE 3

claimed he was sorry and that he would never do it again. Haro claims he regrets the way things happened. He was remorseful that his children's mother is now dead and that one of his five children refused to communicate with him. Furthermore, Haro admits that the crime was wrong, but he doesn't understand why he received a life sentence because the crime wasn't premeditated.

3. Aggravating/Mitigating Circumstances:

a) Aggravating Factors:

a. The crime involved great violence and great bodily harm resulting in the death of a human being.

b. The defendant was armed with or used a weapon at the time of the commission of the crime which was charged as an enhancement under PC 12022.5.

b) Mitigating Factors:

a. The defendant has an insignificant record of prior criminal conduct.

II. PRE-CONVICTION FACTORS:

A. JUVENILE RECORD:

Haro has no known juvenile record.

B. ADULT CONVICTIONS AND ARRESTS:

| Date | Offense | Agency | Disposition |
|------|---------|--------|-------------|
| 01/23/77 | Misdemeanor Drunk Driving on Highway | Los Angeles County Sheriffs Office | Convicted, fined $190.50 |
| 02/12/77 | Petty Theft | El Monte Police Department | Convicted for PC 484(A), Theft of Personal Property and fined $125.00 and 5 days in jail. |

HARO, O              E-66727              ASP-II              JULY 2007

**EXHIBIT 8**

# FILED

OCT 1 0 2007

KIRI TORRE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

|  |  |
|---|---|
| In re | No.: 134834 |
| ONESIMO MARIN HARO, | |
| On Habeas Corpus | ORDER |

Mr. Haro's argument, that the rule of *Cunningham v. California* (2007) 127 S.Ct. 856 and *Blakely v. Washington* (2004) 542 U.S. 296, applies to Parole Board proceedings is rejected.  When a life term, or top, is imposed, *Cunningham* and *Blakely* are inapplicable to the methods used to determine parole suitability.  *Cunningham* and *Blakely* are concerned with going beyond the standard sentence into the area of an aggravated sentence.  Such is not the situation when a "life" sentence is imposed.  Accordingly, the petition for a writ of habeas corpus is denied.

DATED:   6 Oct   , 2007          _____
                                          PAUL BERNAL
                                          JUDGE OF THE SUPERIOR COURT

cc:  Petitioner
     Attorney General
     CJIC
     Research (8-30A)

1

**IN THE SUPERIOR COURT OF CALIFORNIA
IN AND FOR THE COUNTY OF SANTA CLARA**

People of the State of California vs. Onesimo Marin Haro

In re

    Onesimo Marin Haro,

On Habeas Corpus

**FILED**

OCT 10 2007

KIRI TORRE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

| **PROOF OF SERVICE OF: Order in re: Habeas Corpus** | Case Number: **134834** |
|---|---|

CLERK'S CERTIFICATE OF MAILING: I certify that I am not a party to this cause and that a true copy of this document was hand-delivered into the below-listed agency's inter-office pick-up box or was mailed with first class postage fully prepaid in a sealed envelope addressed as shown below and the documents were placed for pick-up or mailed at SAN JOSE, CALIFORNIA on the date shown below. I declare under penalty of perjury that the foregoing is true and correct.

DATED: 10-10-07

Kiri Torre, Chief Executive Officer

BY: Oris A. Wheat, Deputy Clerk

| | |
|---|---|
| Onesimo Haro, E-66727<br>P. O. Box 9<br>Avenal State Prison<br>Avenal, CA 93204 | Research Attorney Criminal Division (8-30A)<br>190 W. Hedding Street<br>San Jose, CA 95110<br>(Placed in Research Attorney pick up box at HOJ) |
| | Office of the Attorney General<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102-7004 |
| | CJIC |

# EXHIBIT 9



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

Court of Appeal · Sixth App. Dist.

# FILED

DEC 3 - 2007

MICHAEL J. YERLY, Clerk

By ————————
         DEPUTY

In re ONESIMO MARIN HARO,

on Habeas Corpus.

H032273
(Santa Clara County
Super. Ct. No. 134834)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Bamattre-Manoukian, Acting P.J., Mihara, J., and McAdams, J.,

participated in this decision.)

Dated    DEC 3  2007            BAMATTRE-MANOUKIAN, J.            Acting P.J.

# EXHIBIT 10

Court of Appeal, Sixth Appellate District - No. H032273
**S159039**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ONESIMO HARO  on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

JAN 1 6 2008

Frederick K. Ohlrich Clerk

Deputy

**GEORGE**

Chief Justice

FEB 2 6 2008

AVENAL STATE PRISON
MAILROOM

RECEIVED
FEB 2 6 2008

AVENAL STATE PRISON

Confidential

FROM:  O. HARO, E-66727
POB 9  530-1-08L
AVENAL, CA  93204

TO:  NORTHERN DISTRICT COURT
280 S. FIRST ST., RM.2112
SAN JOSE, CA  95113-3095
CONFIDENTIAL LEGAL MAIL

neopost
04938D42806

$ 02.840
03/03/2008
Mailed From  93204
US POSTAGE